__ FILED        ___ LODGED
___ RECEIVED    ___ COPY

MAR 0 2 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

**MICHAEL D. QUINN**
1102 South Emma Circle
Payson, AZ 85541
701-748-6111
dakotaquinn@gmail.com
Pro Se Litigant

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

**MICHAEL D. QUINN**,
    Plaintiff,

v.

**TOWN OF PAYSON; OFFICER H. KRAUSE #602; OFFICER J. JOHNSON #431;**
**OFFICER STUMMER #643; SGT. MIKE McANERNY #394; JOHN/JANE DOES 1–5,**
    Defendants.

Case No.: _____ **CV26-01442-PHX-KML--CDB**

**VERIFIED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS**
(42 U.S.C. § 1983)

**JURY TRIAL DEMANDED**

# I. JURISDICTION AND VENUE

1. This action arises under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution.
2. Jurisdiction is proper under 28 U.S.C. § 1331.
3. Venue is proper under 28 U.S.C. § 1391(b).
4. All events occurred in Payson, Arizona.

# II. PARTIES

5. Plaintiff Michael D. Quinn is a resident of Gila County, Arizona.
6. Plaintiff previously served as a municipal judge for approximately twenty-five years. Plaintiff's long judicial service is relevant to the extent that the arrest and strip search caused significant reputational injury and professional humiliation.
7. Plaintiff appears as a pro se litigant.
8. Defendant Town of Payson is a municipal corporation organized under Arizona law.
9. Defendants H. Krause #602, J. Johnson #431, Stummer #643, and Sgt. McAnerny #394 were at all relevant times sworn police officers acting under color of state law.
10. Each individual defendant is sued in both their individual and official capacities.
11. Defendants John/Jane Does 1–5 are individuals whose identities are currently unknown. Plaintiff will seek leave to amend this complaint once their identities are discovered.

# III. FACTUAL ALLEGATIONS

## A. Background and Electronic Communications

12. On August 31, 2025, Tom Hall was making statements about Plaintiff on Facebook.
13. Hall agreed on Facebook to meet Plaintiff at the Payson Police Department so Plaintiff could give Hall the true account of events and Hall would cease making statements online.
14. Hall did not appear at the police station as agreed.
15. After the police-station meeting did not occur, Hall later messaged Plaintiff stating "let's have coffee," without stating where.
16. Hall next messaged Plaintiff stating he was at the casino.
17. Plaintiff messaged Hall that Plaintiff would meet him at the casino and that Plaintiff would be wearing a blue hat.
18. Plaintiff went to the casino and walked through the restaurant area where Hall was seated.
19. Hall did not engage Plaintiff.
20. Plaintiff left the casino.
21. Hall later made statements that Plaintiff was "stalking" him at the casino.
22. Plaintiff had never met or seen Hall in person prior to that day and would not have known Hall's location but for Hall's own messages disclosing it.
23. At each location that day, Plaintiff went only after Hall disclosed his own whereabouts and initiated or indicated a meeting.

## B. Green Valley Park

24. Hall later messaged Plaintiff stating, "I am at Green Valley Park right now."
25. Plaintiff went to Green Valley Park after receiving that message.
26. Plaintiff sat under a tree speaking with Louis Papke who remained in the vicinity during the incident.
27. After waiting, Plaintiff realized Hall was not going to show up.
28. Plaintiff decided to leave.
29. Plaintiff got on his motorcycle with the intent to leave the park.
30. Hall then approached Plaintiff yelling, "quit stalking me and my family."
31. An exchange or argument ensued.
32. When Hall began yelling, Plaintiff suggested they have a calm discussion.
33. Hall demanded that Plaintiff get off his motorcycle and fight.
34. Plaintiff shouted to bystanders to call the police.
35. After the loud argument, Hall walked away.
36. Plaintiff deliberately maintained a distance of approximately 50 to 100 feet from Hall as Hall walked away so the encounter could end peacefully.
37. Plaintiff attempted to leave in the same direction Hall was walking because his motorcycle was oriented that way and it was the easiest exit. Plaintiff also intended to identify Hall's vehicle in case of further problems.
38. Plaintiff was attempting to depart the park and disengage when officers arrived.
39. Plaintiff was then detained and subsequently arrested for harassment.

## C. 911 Call and Exculpatory Evidence

40. Witness Shirley McGeehon made a 911 call.
41. Ms. McGeehon told the dispatcher that Hall was the aggressor.
42. She reported Hall was cursing at Plaintiff and attempting to provoke a fight.
43. The dispatcher asked who the aggressor was; McGeehon identified Hall.
44. Officer Krause later contacted McGeehon behind the park restroom.
45. Krause was informed Hall was the aggressor before the arrest decision was made.

## D. Failure to Investigate

46. Plaintiff repeatedly attempted to explain his version of events but was not permitted to do so.
47. Officers made no attempt to locate or interview Louis Papke, despite his presence being directly relevant to refuting Hall's stalking allegation and tire-damage claim.
48. Krause did not seek out Papke even though Plaintiff identified his location approximately 150 feet away.
49. Officers were aware that electronic communications earlier in the day showed Hall disclosing his locations.

50. Officers made no effort to reconcile Hall's stalking allegations with his voluntary disclosures.
51. Hall never stated he felt physically threatened.
52. Hall never signed or filed a criminal complaint, did not request Plaintiff's arrest, and did not express fear to officers.
53. Hall later messaged Plaintiff stating he did not want Plaintiff arrested.

## E. Tire Allegation and Evidence Handling

54. When Officer Johnson first approached Hall at the park, Hall immediately alleged that Plaintiff had damaged his tire.
55. Plaintiff had no prior knowledge of Hall's vehicle and had not approached it.
56. The only object Plaintiff possessed that could theoretically damage a tire was a small pocket knife.
57. After Plaintiff was handcuffed and placed in the patrol vehicle, officers re-examined Hall's tire.
58. During that re-examination, Hall stated: "I don't think Mike is strong enough to push a nail through my tire."
59. Officers observed a nail caused the puncture and found no evidence Plaintiff damaged the tire.
60. Despite the collapse of Hall's allegation, officers did not reassess Hall's credibility.
61. Plaintiff was never informed that Hall accused him of damaging the tire.
62. Officers did not interview Papke, who could have confirmed Plaintiff never approached the vehicle.
63. The pocket knife taken from Plaintiff was discarded and not preserved as evidence.

## F. Arrest Decision Discussion

64. Body camera audio captures Officer Krause consulting Training Officer Stummer regarding whether to arrest Plaintiff.
65. Krause asked: "My question is, if you book one person, do you also have to book the other?"
66. Stummer responded: "You can arrest Mike. You can arrest the other man. You can arrest both or neither…"
67. Krause stated: "Based on everything that happened all day and him following him all day throughout town…"
68. Krause then called Sgt. McAnerny.
69. After the call, Krause stated: "I just talked to McAnerny. He said the same thing you did…"
70. Stummer replied: "Again, it is your call… if you keep him off the street… I would do it then."
71. At no point did Stummer review statutory elements of harassment.
72. The discussion centered on separation and discretion, not statutory elements.

73. Krause acknowledged she knew Hall from playing softball together.
74. This prior relationship was known before the arrest decision.
75. Krause did not disclose this to Plaintiff.
76. Krause did not disclose it to Sgt. McAnerny, creating an undisclosed conflict.

## G. Lack of Probable Cause

77. Arizona harassment law requires proof of intent to harass, annoy, or alarm.
78. Plaintiff had no such intent.
79. Plaintiff intended only to speak calmly with Hall.
80. Plaintiff was attempting to leave when officers arrived.
81. Exculpatory evidence contradicted Hall's account.
82. Officers knew Hall voluntarily disclosed his locations and that Plaintiff never knew Hall's vehicle.
83. No resisting-arrest charge appears in the police reports.
84. No conduct meeting resisting-arrest elements was documented.

## H. Detention and Strip Search

85. Plaintiff was jailed and strip-searched.
86. Charges were dismissed after prosecutors reviewed the body-camera evidence.
87. During the process, the prosecutor asserted Plaintiff could have been arrested for resisting arrest, despite no such allegation appearing in any report and no video evidence supporting it.

## I. Records Requests and Audio Omission

88. Plaintiff purchased available body-camera recordings.
89. Plaintiff submitted public-records requests pursuant to A.R.S. § 39-121 et seq., but no additional materials were provided
90. Plaintiff was told to contact the Town Attorney instead of being provided records.
91. Audio was missing from portions of the recordings.
92. The missing audio begins immediately after the arrest-decision discussion.
93. The recording later resumes without explanation.
94. Plaintiff believes the muting was not accidental.

# IV. CLAIMS FOR RELIEF

## COUNT I – Fourth Amendment: False Arrest

95. Plaintiff incorporates all preceding paragraphs.
96. Defendants arrested Plaintiff without probable cause.
97. It was clearly established that officers may not ignore known exculpatory evidence—including the 911 caller and witness Papke—in favor of an unreliable accusation.
98. No reasonable officer could infer intent to harass where the complainant initiated all contact and disclosed his own locations.

## COUNT II – Fourth Amendment: Unreasonable Search (Strip Search)

99. Plaintiff incorporates all preceding paragraphs.
100.　Plaintiff was subjected to a strip search following a non-violent, minor misdemeanor arrest.
101.　No individualized reasonable suspicion existed that Plaintiff—a 77-year-old former judge—was concealing weapons or contraband.
102.　The strip search was unreasonable, punitive, and unconstitutional.

## COUNT III – Fourteenth Amendment: Due Process (Evidence)

103.　Plaintiff incorporates all preceding paragraphs.
104.　Officers failed to conduct a reasonable investigation and disregarded known exculpatory evidence.
105.　By discarding Plaintiff's pocket knife and muting body-camera audio during critical moments, Defendants deprived Plaintiff of a fair legal process.

## COUNT IV – Municipal Liability (Monell Claim)

106.　Plaintiff incorporates all preceding paragraphs.
107.　The Town of Payson failed to properly train officers on statutory elements of harassment.
108.　The Town maintained practices of inadequate training and improper handling of public records, demonstrating deliberate indifference to constitutional rights.

# V. DAMAGES

Plaintiff suffered loss of liberty, emotional distress, reputational harm, and other damages in an amount to be proven at trial.
Plaintiff seeks compensatory damages, punitive damages against individual defendants, and costs.

# PRAYER FOR RELIEF

Plaintiff requests:

A. A declaration that Defendants violated Plaintiff's constitutional rights;
B. Injunctive relief;
C. Compensatory damages;
D. Punitive damages against the individual defendants;
E. Statutory costs and expenses;
F. Pre- and post-judgment interest;
G. Any further relief the Court deems just.

# DEMAND FOR JURY TRIAL

109.    Plaintiff demands a jury trial.

# VERIFICATION

110.    I, Michael D. Quinn, declare under penalty of perjury that the foregoing is true and correct.

Date: 3-2-2026

**Michael D. Quinn**
Pro Se Plaintiff
1102 South Emma Circle
Payson, AZ 85541

701-748-6111
dakotaquinn@gmail.com